**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 16 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

PLACIDO DOMINGUEZ-MORENO,

 Defendant-Appellant.

No. 96-8093
(D.C. No. CR-034-03B)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **KELLY**, Circuit Judges.

 Defendant-Appellant Placido Dominguez-Moreno pled guilty to one count of conspiracy to distribute marijuana. Pursuant to Fed. R. Crim. P. 11(a)(2), the plea was conditional upon Dominguez-Moreno's appeal of his motion to suppress, which was denied by the district court. Dominguez-Moreno claimed that he was arrested without probable cause, and that incriminating evidence found after his

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

arrest was a fruit of his arrest.  Because we conclude that there was probable cause for Dominguez-Moreno's arrest, we affirm both the denial of the motion to suppress and the conviction.

## BACKGROUND

In February 1996, George Mazzuca, a confidential informant for the Wyoming Division of Criminal Investigation (DCI), contacted DCI agents with information concerning a drug transaction involving Jose Luis Garcia-Aviles. Mazzuca informed the DCI agents that Garcia-Aviles was seeking to distribute marijuana in Colorado and Wyoming, and had contacted Mazzuca in hopes of completing a sale.  Mazzuca had previously informed the DCI that Garcia-Aviles was a significant supplier of cocaine and marijuana, and the DCI had elsewhere learned that Garcia-Aviles had been arrested in Nebraska with $100,000 and a large quantity of cocaine.

On March 11, 1996, Garcia-Aviles contacted Mazzuca and offered to sell him marijuana.  Mazzuca agreed to purchase twenty pounds of marijuana at a price of $1,000 per pound.  Mazzuca then informed the DCI of the pending drug sale.  On March 13, 1996, in a call monitored by the DCI, Mazzuca telephoned Garcia, who was staying in Denver, Colorado, to make further arrangements for the sale.  Mazzuca and Garcia-Aviles agreed to meet at a McDonald's restaurant located on Interstate 25 near Cheyenne, Wyoming, although it is unclear whether

the intended rendezvous point was in Cheyenne or in Chugwater, Wyoming. Additionally, during this conversation, Mazzuca and Garcia-Aviles agreed to a reduced purchase price for the marijuana of $700 per pound. The meeting was to take place at approximately 4:00 that afternoon, and Garcia informed Mazzuca that he would be driving a black Ford Thunderbird.

The DCI established surveillance points south of Cheyenne near the Colorado-Wyoming border. Although Garcia-Aviles only mentioned the black Thunderbird in his telephone conversation with Mazzuca that day, Mazzuca had previously informed the DCI that Garcia-Aviles brought the marijuana into the United States using both a black Thunderbird with New Mexico plates and a gray Oldsmobile with Chihuahua, Mexico plates. At approximately 3:15 p.m, DCI offers observed two vehicles matching Mazzuca's description driving northbound on I-25. The vehicles appeared to be driving in tandem, as each vehicle was driving at 60 miles per hour, fifteen miles per hour below the posted speed limit, and each would change lanes from time to time at approximately the same time as the other.

The vehicles drove past the exit for the Cheyenne McDonald's and continued northbound on I-25. The DCI decided to stop the vehicles at milepost 22 on I-25. Because Mazzuca had informed the DCI that Garcia-Aviles generally traveled with weapons close at hand, the DCI decided that it would conduct a

"felony stop." At approximately 3:40 p.m, DCI agents stopped the vehicles and, after approaching the vehicles with weapons drawn, asked the occupants to exit the vehicles. Upon exiting the vehicles, the occupants were immediately handcuffed.

Dominguez-Moreno was the driver and sole occupant of the black Thunderbird, the vehicle Mazzuca had told the DCI would be used in the drug transaction. Garcia-Aviles and Noe Garcia-Avarca were in the Oldsmobile. Garcia-Aviles' appearance was consistent with the description given the DCI by Mazzuca: a short, heavyset man wearing western attire and western boots.

Because the weather was cold, windy, and rainy, the DCI only conducted a cursory search of the vehicles during the stop on I-25. No contraband or weapons were found during this preliminary search. However, the vehicles were taken to DCI headquarters for further investigation. A subsequent search of the Thunderbird uncovered 26 pounds of marijuana wrapped in 33 bricks.

After his indictment for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana, Dominguez-Moreno filed a motion to suppress the marijuana based on the contention that the DCI did not have probable cause to arrest him, and thus the marijuana was tainted by the illegal arrest. After the district court denied that motion, Moreno entered a conditional guilty plea to one count of conspiracy to possess with intent to

distribute marijuana. Dominguez-Moreno now appeals the denial of his suppression motion. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

In reviewing a district court decision that suppresses evidence, we review the district court's findings of historical fact under the clearly erroneous standard. United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). However, the district court's ultimate determination as to whether a Fourth Amendment violation occurred is reviewed de novo. Id.

The United States concedes that Dominguez-Moreno was arrested when the vehicle he was driving was stopped on I-25 and he was placed in handcuffs. Thus, the only issue before us is whether the DCI had probable cause to effect that arrest. We conclude that there was probable cause to arrest Dominguez-Moreno.

By the time Dominguez-Moreno was arrested, the DCI knew: Garcia-Aviles had entered the United States with large quantities of marijuana that he intended to sell in Wyoming and Colorado; that he was using two vehicles, a black Thunderbird and a gray Oldsmobile, to transport drugs; that he had arranged to travel from Denver to Wyoming via I-25 on the afternoon of March 13, 1996 to sell twenty pounds of marijuana to Mazzuca, and that he might be accompanied by others; that the two vehicles known to be used by Garcia to transport marijuana

were observed on I-25 north of the Colorado-Wyoming border, traveling in tandem at a speed substantially below the posted speed limit; that a person matching Garcia-Aviles' description was an occupant of one of the cars; and, that Dominguez-Moreno was the sole occupant of the Thunderbird, the vehicle that Garcia-Aviles had told Mazzuca would be used in the drug transaction that afternoon. This information gave the DCI agents probable cause to believe that a crime was being committed by the occupants of the two cars, and thus to arrest Dominguez-Moreno as one of the occupants.

The cases cited by Dominguez-Moreno do not support his position that there was no probable cause to support the arrest. Dominguez-Moreno was not arrested because of his mere presence at the scene of a crime. Compare Ybarra v. Illinois, 444 U.S. 85, 91 (1980) (holding that a person's "mere propinquity" to persons suspected of criminal activity does not provide probable cause to search that person). Rather, he was driving a car specifically identified by Mazzuca as the one to be used to transport drugs for a drug deal, in volitional and obvious tandem with a car driven by a person Mazzuca had identified as a drug dealer and who the DCI had strong reason to believe was on his way to a drug deal.

We recognize that United States v. Melendez-Garcia, 28 F.3d 1046 (10th Cir. 1996) involves facts somewhat similar to those in this case, and that we stated in dicta in that case that "no [probable cause] argument could be made on

- 6 -

this record." Id. at 1052. However, in addition to the fact that the government did not contend that the arrest was predicated on probable cause in that case, the officers in Melendez-Garcia had less information, and less reliable information, about the occupants of the vehicles than did the officers in this case. First, the information in Melendez-Garcia was provided by a confidential informant, id. at 1049, whereas here the DCI had worked with Mazzuca in the past and knew that he was reliable. D. Ct. Order at 26.

Further, the information in Melendez-Garcia did not provide any particular indication that the occupants of the vehicle would be armed and dangerous, and that a felony stop was needed to secure the vehicles, whereas here Mazzuca informed the DCI that Garcia-Aviles would be armed. The reliability of the information provided by Mazzuca was further buttressed because the DCI monitored the telephone conversation between Mazzuca and Aviles-Garcia during which the drug deal was set up, and was able to obtain very specific information about the time frame within which the drug deal would take place and the types of vehicles that would be used. Compare Melendez-Garcia, 28 F.3d at 1049 (officers knew drugs would be transported within "the next few days"). In fact, we have held that the quality and quantity of information about the defendant present in this case is sufficient to support a conviction. United States v. Lopez-

Gutierrez, 83 F.3d 1235, 1244 (10th Cir. 1996). A fortiori, then, such information is adequate to support a probable cause determination.

Because Moreno's arrest was valid, the subsequent search of the Thunderbird was valid as well.

## CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Moreno's motion to suppress, and therefore AFFIRM the conviction upon his conditional guilty plea. The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge